UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:                                                    Case No. 20-19507-BKC-MAM

CEMHAN BIRICIK and ISABEL C BIRICIK,                      Chapter 7

      Debtors.
_____/

SQUEEZE, LLC, a foreign limited liability                Adv. Case No.
company, d/b/a SQUEEZE STRATEGIES, LLC
and ABIDING VENTURES, LLC, a Florida
limited liability company,

      Plaintiffs,
vs.

CEMHAN BIRICIK and ISABEL C BIRICIK,

      Defendants.
_____/

## COMPLAINT OBJECTING TO DISCHARGE AND TO
## THE DISCHARGEABILITY OF A DEBT

Squeeze, LLC, a foreign limited liability company, d/b/a Squeeze Strategies, LLC ("Squeeze" or the "Plaintiff") and Abiding Ventures, LLC, a Florida limited liability company ("Abiding Ventures"), by counsel, pursuant to 11 U.S.C. §§ 727 and 523, bring this Complaint Objecting to Discharge and to the Dischargeability of a Debt against Cemhan Biricik ("Cemhan") and Isabel C Biricik ("Isabel") (collectively, the "Defendants"), and allege as follows:

### Jurisdiction and Venue

1.      This case was commenced by the filing of a voluntary Chapter 7 petition on August 31, 2020 (the "Petition Date") by the Defendants.

2.      This is an action objecting to the Debtors' discharge, pursuant to 11 U.S.C. § 727, and objecting to the dischargeability of a debt, pursuant to 11 U.S.C. § 523.

3.      This is a core proceeding and this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 7001.

4.      Venue is proper herein pursuant to 28 U.S.C. §§ 1408 and 1409.

## Parties

5.      Squeeze, LLC is a Delaware limited liability company, d/b/a Squeeze Strategies, LLC.  Elias Janetis ("Janetis") is the Manager of Squeeze, LLC.

6.      Abiding Ventures, LLC is a Florida limited liability company also owned by Janetis.

7.      Cemhan Biricik is the Debtor.

8.      Isabel C Biricik is the spouse of the Debtor and is the Joint Debtor.

## General Allegations

9.      Biricik LLC is an inactive Florida limited liability company.  During all relevant time periods, Isabel Biricik was the sole owner and Member of Biricik LLC.

10.      Squeeze operates an online website and application that allows consumers the ability to compare recurring services, find promotional coupons, and track their spending.

## The Transactions Between Cemhan, Biricik LLC and Squeeze

11.      Cemhan and Biricik LLC marketed themselves as, among other things, specialists in cryptocurrency consulting, investing and Initial Coin Offering ("ICO") creation.

12.      In late January/early February 2018, Cemhan had ongoing negotiations with management at Squeeze to discuss whether Squeeze could benefit from creating an ICO, and if so, whether this was something that Cemhan and Biricik LLC could assist Squeeze with implementing.

13.      During the course of those negotiations, Cemhan told management at Squeeze, repeatedly, that he was well-versed in ICO creation, that the consultancy work he was proposing to Squeeze was legal and did not violate any securities laws, and that if at any time Squeeze was dissatisfied with Cemhan's and Biricik LLC's work, Cemhan would promptly refund any amount paid to Biricik LLC for their services.

14.     Based upon these representations, on or about February 8, 2018, Squeeze entered into a series of agreements with Biricik LLC, including the following:

a.     An ICO Website Design Agreement ("WDA"), pursuant to which Biricik LLC agreed to create an ICO crowd sale website;

b.     ICO Marketing Consulting Agreements (collectively "MCA"), pursuant to which Biricik LLC agreed to provide certain marketing services on behalf of Squeeze; and

c.     A TOKEN Development Agreement ("TDA") pursuant to which Biricik LLC agreed, among other things, to (a) "design a custom Ethereum Token" on behalf of Squeeze, and (b) provide "Crowd sale custom code creation."

Copies of the WDA, MCA and TDA (collectively referred to herein as the "Agreements") are attached as Composite Exhibit "A."

15.     In connection with these services, Cemhan and Biricik LLC issued an invoice to Squeeze dated February 6, 2018 in the total amount of $148,000.00, of which 50% was "due upon receipt." A copy of this invoice is attached as Exhibit "B."

16.     Based upon Cemhan's and Biricik LLC's repeated assurances that the ICO did not violate state or federal securities laws, Squeeze executed the Agreements.

17.     In addition, Abiding Ventures, LLC, a limited liability company also owned by Janetis, on behalf of Squeeze, paid Biricik LLC an initial deposit of $74,000.00 (the "Squeeze Funds"). A copy of the payment is attached as Exhibit "C".

18.     Shortly thereafter, Squeeze discussed the proposed ICO in greater detail with legal counsel, and Squeeze discovered that the Cemhan's and Biricik LLC's proposed ICO was a violation of both state and federal securities laws.

19.     Therefore, on or about March 5, 2018, Janetis, on behalf of Squeeze, sent an email to Cemhan explaining the foregoing and advising that Squeeze was therefore not going to move forward with the proposed ICO. A copy of the email is attached as Exhibit "D."

20.     Janetis also requested that Cemhan and Biricik LLC return the Squeeze Funds that Squeeze, through Abiding Ventures, LLC, had previously paid.

21.     Despite Squeeze's repeated demands for the return of its initial deposit, Cemhan and Biricik LLC have failed to respond and failed to return the Squeeze Funds to Squeeze.

## The State Court Proceeding

22.     As a result, on April 9, 2018, Squeeze commenced a lawsuit (the "Complaint") against Cemhan and Biricik LLC, in the Palm Beach County Circuit Court (the "State Court"), Case No. 50-2018-CA-004290-XXXX-MB, for rescission of the Agreements (Count 1), Fraudulent Inducement (Count 2), Conversion (Count 3) and Unjust Enrichment (Count 4) (the "State Court Proceeding").  A true and correct copy of the Complaint filed in the State Court Proceeding is attached as Exhibit "E".

23.     On January 29, 2019, Cemhan filed a voluntary Chapter 13 bankruptcy proceeding, Case No. 19-11213-EPK, in the United States Bankruptcy Court for the Southern District of Florida (the "First Bankruptcy Case").

24.     Thereafter, on February 1, 2019, the State Court entered a Final Judgment in favor of Squeeze and against Biricik LLC, in the amount of $75,590.73, plus post-judgment interest (the "Biricik LLC Final Judgment").  A true and correct copy of the Biricik LLC Final Judgment is attached as Exhibit "F".

25.     On July 10, 2019, the First Bankruptcy Case was dismissed, by virtue of an Agreed Order Denying Confirmation and Dismissing Chapter 13 Case with Prejudice for 180 Days [ECF No. 67 in the First Bankruptcy Case].

26.     On January 10, 2020, Squeeze filed an Impleader Complaint against Cemhan and Isabel, alleging, among other things, the existence of alter ego liability against Cemhan and Isabel, for the acts of Biricik LLC.

27.     On July 9, 2020, the State Court entered a Final Judgment Against Cemhan Biricik,

in the amount of $76.025.81, plus post-judgment interest (the "Cemhan Biricik Final Judgment"), on Squeeze's claim(s) for Fraudulent Inducement (Count 2), Conversion (Count 3) and Unjust Enrichment (Count 4).  A true and correct copy of the Cemhan Biricik Final Judgment is attached as Exhibit "G".

28.     Thereafter, on July 20, 2020, Squeeze filed the Judgment Creditor's Motion for Default Final Judgment in Proceedings Supplementary to Execution (the "Motion for Default"), in the State Court Proceeding, against Cemhan and Isabel.  The Motion for Default was scheduled for hearing on September 3, 2020 at 10:00 a.m. in the State Court.

29.     However, on August 31, 2020, the Defendants filed the above-captioned bankruptcy proceeding, which automatically stayed the State Court Proceeding.

### The Biricik LLC TD Bank Account

30.     The Squeeze Funds were deposited into Biricik LLC's bank account at TD Bank, N.A. (Acct # 6177) (the "TD Bank Account") on February 8, 2018.

31.     A cursory review of the TD Bank Account demonstrates that at all relevant times, Biricik LLC was nothing more than the alter ego/mere instrumentality of both Cemhan and Isabel.

32.     In that regard, Cemhan and Isabel used the Squeeze Funds deposited into the Biricik LLC TD Bank Account as their own personal funds and cause Biricik LLC to:

    a.     Pay their personal credit card expenses;

    b.     Pay their personal motor vehicle expenses;

    c.     Pay their children's school tuition and/or child support obligations;

    d.     Pay their personal meal expenses;

    e.     Pay their personal entertainment expenses; and

    f.     Pay off their personal debts.

33.     In fact, Isabel was the only authorized user on the TD Bank Account from May 1, 2017 until February 13, 2018, when she suddenly added Cemhan as an authorized user.  This

occurred just five (5) days after the Squeeze Funds were deposited into the TD Bank Account.

34.    Prior to receiving the Squeeze Funds, the TD Bank Account had a negative balance.

35.    Biricik LLC was administratively dissolved on September 22, 2017.

36.    The continued operation of Biricik LLC after dissolution resulted in a partnership business operated jointly by Cemhan and Isabel under the then-fictitious name "Biricik LLC".

37.    From January 2018 until the TD Bank Account was closed in October 2018, there were only three (3) other deposits made into the account, to wit: (a) $20.00 on January 19, 2018; (b) $20.00 on February 8, 2018; and (c) $2,247.21 made on July 2, 2018.  In other words, over 97% of the funds in this account came directly from Squeeze.

38.    Cemhan and Isabel used the Squeeze Funds to pay $9,133.51 to American Heritage School from February 2018 through July 2018 from the TD Bank Account.

39.    Cemhan and Isabel used the Squeeze Funds to pay $4,394.45 to St. Paul Lutheran's School from the TD Bank Account.

40.    Cemhan and Isabel used the Squeeze Funds to pay $4,945.00 to Cemhan's father from the TD Bank Account.

41.    Cemhan and Isabel used the Squeeze Funds to pay $4,763.99 to furniture and electronics stores from the TD Bank Account.

42.    Cemhan and Isabel used the Squeeze Funds to pay $6,492.61 towards automobiles and automotive insurance from the TD Bank Account.

43.    Cemhan and Isabel used the Squeeze Funds to pay $3,100.00 directly to Cemhan from the TD Bank Account.

44.    Cemhan and Isabel used the Squeeze Funds to pay $1,860.87 towards Cemhan's child support payments related to his prior marriage from the TD Bank Account.

45.    Cemhan and Isabel used the Squeeze Funds to incur 145 separate charges for purchased made on Amazon between February 2018 and July 2018 from the TD Bank Account.

46.     Cemhan and Isabel used Biricik LLC to induce Squeeze into believing that through Biricik LLC, they routinely provided assistance in ICO creation, when in fact, they had no other clients and were essentially out-of-business, as evidenced by the negative account balance in the TD Bank Account prior to receiving the Squeeze Funds, the fact that no other significant deposits were made into the TD Bank Account, and the fact that Biricik LLC was administratively dissolved during this time period.

### The Instant Bankruptcy Proceeding

47.     On October 6, 2020, Squeeze, though counsel, filed a Notice of Rule 2004 Examination *Duces Tecum* [ECF No. 22] (the "2004 Notice").

48.     Squeeze requested in the 2004 Notice that the Defendants provide numerous documents and records no later than October 16, 2020, as listed in Exhibit "A" of the 2004 Notice (the "Document List").

49.     Squeeze also requested in the 2004 Notice that the Defendants appear for their Rule 2004 Examination on October 22, 2020 at 10:30 a.m. (the "2004 Examination").

50.     The Defendants did, in fact, appear at their 2004 Examination on October 22, 2020 at 10:30 a.m.

51.     Isabel testified at the 2004 Examination that she did not have any documents responsive to the Document List.

52.     Cemhan testified at the 2004 Examination that he had a joint bank account with his mother at Bank of America, N.A.  However, Cemhan was unable to provide an explanation as to several transactions from this bank account, including transactions made for his own personal use and benefit.

53.     Cemhan also testified at the 2004 Examination that he does not ". . . really keep records and stuff."

54.     At the 2004 Examination, both Cemhan and Isabel were unable to explain several

transactions made from the Biricik LLC TD Bank Account, which was comprised mostly from the Squeeze Funds.

55.     All conditions precedent to bringing this action, if any, have occurred or have been performed, waived or excused.

**Count 1 – Objection to Discharge (11 U.S.C. § 727(a)(3)) (Against Both Defendants)**

56.     The Plaintiffs reallege all of the allegations set forth in each of the paragraphs above.

57.     The Defendants have concealed, destroyed, mutilated, falsified and/or failed to keep or preserve recorded information, including books, documents, records and/or papers, from which the Defendants' financial condition or business transactions might be ascertained.

58.     Such acts or failure(s) to act were not justified under all of the circumstances of this case.

59.     As such, the Defendants' discharge should be denied, pursuant to 11 U.S.C. § 727(a)(3).

WHEREFORE, Squeeze (and to the extent that the Court determines that Abiding Ventures is the appropriate party-plaintiff, Abiding Ventures) request(s) that this Court enter judgment against the Defendants: (a) denying the Defendants' discharge pursuant to 11 U.S.C. § 727(a)(3); and (b) granting such other and further relief as the Court deems just and proper.

**Count 2 – Objection to Discharge (11 U.S.C. § 727(a)(5)) (Against Both Defendants)**

60.     The Plaintiffs reallege all of the allegations set forth in each of the paragraphs above.

61.     The Defendants have failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet the Defendants' liabilities.

62.     As such, the Defendants' discharge should be denied, pursuant to 11 U.S.C. § 727(a)(5).

WHEREFORE, Squeeze (and to the extent that the Court determines that Abiding Ventures is the appropriate party-plaintiff, Abiding Ventures) request(s) that this Court enter judgment against the Defendants: (a) denying the Defendants' discharge pursuant to 11 U.S.C. § 727(a)(5); and (b) granting such other and further relief as the Court deems just and proper.

## Count 3 – Objection to the Dischargeability of a Debt (11 U.S.C. § 523(a)(2)(A)) (Against Cemhan Biricik)

63.     The Plaintiffs reallege all of the allegations set forth in each of the paragraphs above.

64.     Cemhan made false representations to Squeeze's representative(s), with the intent to deceive Squeeze.

65.     Cemhan knew or should have known that the representations were false at the time they were made.

66.     Squeeze relied on the misrepresentation in signing the Agreements and remitting the Squeeze Funds to Biricik LLC.

67.     Such reliance was justified given the circumstances.

68.     Squeeze and/or Abiding Ventures sustained a loss as a result of the misrepresentation(s).

WHEREFORE, Squeeze (and to the extent that the Court determines that Abiding Ventures is the appropriate party-plaintiff, Abiding Ventures) request(s) that this Court enter judgment against Cemhan: (a) determining that the debt owed by Cemhan to Squeeze (and/or Abiding Ventures) is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); and (b) granting such other and further relief as the Court deems just and proper.

## Count 4 – Objection to the Dischargeability of a Debt (11 U.S.C. § 523(a)(4)) (Against Both Defendants)

69.     The Plaintiffs reallege all of the allegations set forth in each of the paragraphs above.

70.    As set forth above, Cemhan and Isabel appropriated the Squeeze funds for their own use and benefit and did so with fraudulent intent or deceit.

71.    As such, debt owed by the Defendants were incurred for larceny, pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, Squeeze (and to the extent that the Court determines that Abiding Ventures is the appropriate party-plaintiff, Abiding Ventures) request(s) that this Court enter judgment against the Defendants: (a) determining that the debt owed by the Defendants to Squeeze (and/or Abiding Ventures) is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4); and (b) granting such other and further relief as the Court deems just and proper.

## <u>Count 5 – Objection to the Dischargeability of a Debt (11 U.S.C. § 523(a)(6))</u> <u>(Against Both Defendants)</u>

72.    The Plaintiffs reallege all of the allegations set forth in each of the paragraphs above.

73.    As set forth above, Cemhan and Isabel intentionally appropriated the Squeeze funds for their own use and benefit.

74.    Such action(s) were done with the intent to harm Squeeze.

75.    Such action(s) caused damage to Squeeze.

76.    Such injury is the approximate result of the action(s) of the Defendant.

77.    As such, debt owed by the Defendants were incurred for a willful and malicious injury by the Defendants to Squeeze or to the property of Squeeze, pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, Squeeze (and to the extent that the Court determines that Abiding Ventures is the appropriate party-plaintiff, Abiding Ventures) request(s) that this Court enter judgment against the Defendants: (a) determining that the debt owed by the Defendants to Squeeze (and/or

Abiding Ventures) is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6); and (b) granting such

other and further relief as the Court deems just and proper.

## **Reservation of Rights**

Upon completion of his investigation and discovery, the Plaintiffs reserve the right to

amend this Complaint to assert any additional claims for relief against the Defendants as may be

warranted under the circumstances and as permitted by law.

Dated: November 30, 2020

LEIDERMAN SHELOMITH
ALEXANDER + SOMODEVILLA, PLLC
Counsel for the Plaintiffs
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile: (954) 920-5371

By:_____/s/_____
     ZACH B. SHELOMITH
     Florida Bar No. 0122548
     zbs@lsaslaw.com

## WEBSITE DESIGN AGREEMENT

This Website Design Agreement (this "**Agreement**") is made effective as of February 08, 2018 (the "**Effective Date**"), by and between Squeeze. LLC (the "**Owner**"), of 901 NW 35th Street, Boca Raton, Florida 33431, and Biricik LLC (the "**Designer**"), of 1580 se 8th st, Deerfield Beach, Florida 33441.

**1. Description of the Services.** The Designer will design a website (the "**Website**") for the Owner by timely providing the design and programming services listed on **Schedule A** (the "**Services**") in a professional and timely manner. All programming and documentation shall comply with standards currently employed by the Owner. The parties may at any time modify the scope of the Services by including desired changes in a written "change order" that explains the changes and the adjustment to the payment for the Services that will result from such changes. Such change order shall become effective when signed and dated by both parties.

**2. Design Team.** The Designer will use only qualified personnel to provide the Services (the "**Design Team**"). The Designer reserves the right to make changes to the Design Team in its sole discretion and will provide prior written notice of any anticipated change and a reasonable explanation for the change. Orientation of replacement personnel shall be at the Designer's expense.

**3. Term / Scheduling.** The Services will be completed timely in accordance with the schedule set forth on **Schedule A**. The Designer will begin the Services on the designated date and continue until the satisfactory completion of the Services. The term "**satisfactory completion**" of the Services means when the software and documentation developed for the Website performs to the specifications set forth on **Schedule A**.

**4. Payments.** In consideration for the Services, the Owner will pay the Designer in accordance with the payment schedule and terms set forth on **Schedule B**.

**5. Ownership Rights.** The Owner will own all of its proprietary information as included in the Services, as well as all source code, object code, screens, documentation, digital programming, operating instructions, design concepts, content, graphics, domain names, and characters. All Services provided by the Designer, including systems, computer programs, operating instructions, unique design concepts, other documentation developed for or specifically relating to the Owner' information processing, all of the Owner's source documents, stored data and other information of any kind, and reports and notes prepared by the Designer, will be "works for hire" under applicable United States copyright laws, and therefore the property of the Owner. Such work may not be used by the Designer for any other purpose except for the benefit of the Owner. Any and all such property shall be delivered to the Owner on request by the Owner. Upon request, the Designer shall sign all documents necessary to confirm or perfect the exclusive ownership interests of the Owner.

– COMPOSITE EXHIBIT "A" –

Composite Exhibit "A"

**6. Copyright Notice.** The Designer shall include the following copyright notice (or any other notices requested by the Owner) to be displayed on each page of the Website that can be viewed by a user: "Copyright Biricik LLC 2018; all rights reserved."

**7. Confidentiality.** The Designer will not at any time or in any manner, either directly or indirectly, use for the personal benefit of the Designer, or divulge, disclose, or communicate in any manner any information that is proprietary to the Owner (e.g., trade secrets, know-how and confidential information). The Designer will protect such information and treat it as strictly confidential. This provision shall continue to be effective after the termination of this Agreement. Upon termination of this Agreement, the Designer will return to the Owner all records, notes, documentation and other items that were used, created, or controlled by the Designer during the term of this Agreement. The Owner may seek and obtain injunctive relief against the release or threatened release of such information in addition to any other legal remedies which may be available.

**8. Non-Solicitation of Employees.** The Owner and the Designer agree to refrain from soliciting for employment, without the prior written consent of the other, their respective employees during the term of this Agreement and for a period of two (2) years following the termination of this Agreement.

**9. Working Hours, Office Space and Testing Time.** The Designer's employees, when working on the premises of the Owner, shall observe the Owner's working hours, working rules and policies. The Owner shall provide adequate office space and testing time for the Designer.

**10. Independent Contractor.** The Designer is an independent contractor with respect to its relationship to the Owner. Neither the Designer nor the Designer's employees are or shall be deemed for any purpose to be employees of the Owner. The Owner shall not be responsible to the Designer, the Designer's employees, or any governing body for any payroll taxes related to the performance of the Services. Upon request, the Designer will provide evidence of appropriate insurance coverage for workers compensation and general liability insurance.

**11. Promotion.** The Designer will not use the names, trademarks, service marks, symbols or any abbreviations of the Owner, without the prior written consent of the Owner.

**12. Warranty - Designer.** The Designer warrants to the Owner that all software programming, web pages, CD-ROMs, diskettes, and materials delivered to the Owner in connection with the Services are free from defects in materials and faulty workmanship under normal use, and that the Website will operate properly with widely used web browsers. During the Designer's recommended beta testing period and for a 30 day period following completion of beta testing, the Designer will correct any software anomalies ("bugs") that occur because of defects in the source code included in the software. After such time, the Designer will make changes on a fixed hourly rate or a negotiated fixed quote basis. While no website design process is able to guarantee bug-free results, the Services will be provided in a workmanlike manner, within local industry standards and tolerances for commercial applications. This warranty does not cover items damaged, modified or misused after delivery to the Owner.

**13. Warranty - Intellectual Property Rights.** The Designer represents and warrants that it has the unencumbered right and power to enter into and perform this Agreement and that the Designer is not aware of any claims or basis for claims of infringement of any patent, trademark, copyright, trade secret, or contractual or other proprietary rights of third parties in or to any programming or materials included by the Designer in the Services or trade names related to the Services. In the event of any claim, charge, suit or proceeding by any third party against the Owner alleging such infringement, the Designer shall defend such claim, charge, suit or proceeding. The Designer shall indemnify and hold the Owner harmless from and against any loss, cost, damage or expense (including attorney's fees and legal expenses) incurred by the Owner that may result by reason of any such claim, charge, suit or proceeding. The Owner shall have the right, if it so desires, to be represented in any such claim, charge, suit or proceeding by counsel. If any of the programming or materials included by the Designer in the Services becomes the subject of an infringement suit, the Owner may terminate this Agreement and shall be entitled to a refund of any payments that it has made to the Designer under this Agreement. This indemnity shall not apply to materials provided by the Owner as contemplated by the following paragraph.

**14. Warranty - Owner.** The Owner represents and warrants to the Designer that the Owner owns (or has a legal license to use) all photos, text, artwork, graphics, designs, trademarks, and other materials provided by the Owner for inclusion in the Website, and that the Owner has obtained all waivers, authorizations, and other documentation that may be appropriate to evidence such ownership. The Owner shall indemnify and hold the Designer harmless from all losses and claims, including attorney's fees and legal expenses, that may result by reason of claims by third parties related to such materials

**15. Disclaimer of Warranties.** EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, THE PARTIES HEREBY SPECIFICALLY DISCLAIM ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE SERVICES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR IMPLIED WARRANTIES ARISING FROM COURSE OF DEALING OR COURSE OF PERFORMANCE.

**16. Limitation of Liability.** UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR ANY THIRD PARTY FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES (EVEN IF THAT PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES), ARISING FROM ANY PROVISION OF THIS AGREEMENT SUCH AS, BUT NOT LIMITED TO, LOSS OF REVENUE OR ANTICIPATED PROFIT OR LOST BUSINESS, COSTS OF DELAY OR FAILURE OF DELIVERY, OR LIABILITIES TO THIRD PARTIES ARISING FROM ANY SOURCE.

**17. Indemnity.** Each party agrees to defend, indemnify, and hold harmless the other party and its officers, directors, agents, affiliates, distributors, representatives, and employees from any and all third party claims, demands, liabilities, costs and expenses, including reasonable attorney's fees, costs and expenses resulting from the indemnifying party's material breach of any duty,

representation, or warranty under this Agreement.

**18. Assignment.** This Agreement is not assignable, in whole or in part, by either party without the prior written consent of the other party. Any attempt to make such assignment shall be void.

**19. Attorney's Fees.** In any legal action between the parties concerning this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs.

**20. Termination.** This Agreement shall terminate automatically upon the completion of the Services described herein. In the event of such termination, the Owner shall be obligated to pay only for actual services provided by the Designer and for expenditures incurred with the Owner's approval.

**21. Termination on Default.** If a party defaults by failing to substantially perform any provision, term or condition of this Agreement (including without limitation the failure to make a monetary payment when due), the other party may terminate this Agreement by providing written notice to the defaulting party. The notice shall describe with sufficient detail the nature of the default. The party in default shall have 14 business days from the effective date of such notice to cure the default(s). Unless waived by the party providing the notice, the failure to cure the default(s) within such time period shall result in the automatic termination of this Agreement.

**22. Taxes.** The Owner shall pay the amount of any sales, use, excise or similar taxes applicable to the performance of the Services, if any, or, in lieu of such payment, the Owner shall provide the Designer with a certificate acceptable to the taxing authorities exempting the Owner from payment of such taxes.

**23. Severability.** If any provision of this Agreement is held to be invalid, illegal or unenforceable, the remaining portions of this Agreement shall remain in full force and effect and construed so as to best effectuate the original intent and purpose of this Agreement.

**24. Governing Law / Forum.** This Agreement shall be construed in accordance with the internal laws of the State of Florida, without regard to conflict of laws rules. Venue shall be in a court of competent jurisdiction in the State of Florida, and both parties expressly consent to jurisdiction in such courts.

**25. Complete Contract / Amendment.** This Agreement supersedes all prior agreements and understandings between the parties for performance of the Services, and constitutes the complete agreement and understanding between the parties. The parties may amend this Agreement in a written document signed by both parties.

**26. SIGNATORIES.** This Agreement shall be signed by Elias Janetis, Owner on behalf of Squeeze. LLC and by Cemhan Biricik, CEO on behalf of Biricik LLC. This Agreement is effective as of the date first written above.

This is a RocketLawyer.com document.
Composite Exhibit "A"

Page 4 of 7

**OWNER:**
Squeeze. LLC

By: _____

Elias Janetis
Owner


**DESIGNER:**
Biricik LLC

By: _____

Cemhan Biricik
CEO

Composite Exhibit "A"

## Schedule A

## Description of Services and Schedule

Whitepaper / Website design

Composite Exhibit "A"

# Schedule B

## Payment Terms

$15,000 due immediately

Composite Exhibit "A"

# MARKETING CONSULTING AGREEMENT

This Marketing Consulting Agreement (the "Agreement") is made effective as of February 08, 2018, by and between Squeeze. LLC ("Squeeze"), of 901 NW 35th Street, Boca Raton, Florida 33431, and Biricik LLC ("Consultant"), of 1580 se 8th st, Deerfield Beach, Florida 33441.

Consultant has a background in marketing and is willing to provide services to Squeeze based on this background.

Squeeze desires to have services provided by Consultant.

Therefore, the parties agree as follows:

**1. DESCRIPTION OF SERVICES.** Beginning on February 08, 2018, Consultant will provide the following services (collectively, the "Services"):

ICO organic Marketing

## 2. PERFORMANCE OF SERVICES.

a. Consultant shall implement plans and strategies that help Squeeze sell its products or services.

b. Consultant shall conduct research to know the consumer behavior and what motivates consumers' purchase of a product. Consultant shall use that research to design approaches specific to Squeeze's needs.

c. Consultant shall interact with the sales and product teams to determine the marketing strategy.

d. Consultant shall take steps to organize marketing events like exhibitions, competitions, road shows, seminars.

e. Consultant shall work with the public relations team to review branding, positioning of Squeeze's ads to make sure that the ads have an impact on the public.

The manner in which the Services are to be performed and the specific hours to be worked by Consultant shall be determined by Consultant. Squeeze will rely on Consultant to work as many hours as may be reasonably necessary to fulfill Consultant's obligations under this Agreement.

**3. PAYMENT.** Squeeze will pay a fee to Consultant for the Services in the amount of $65,000.00. This fee shall be payable in a lump sum Due immediately.

Composite Exhibit "A"

**4. SUPPORT SERVICES.** Squeeze will provide the following support services for the benefit of Consultant:

- Office space
- Support staff
- Content for advertising
- Media for advertising

**5. TERM/TERMINATION.** This Agreement shall be effective for a period of 1 week after the completion of the token crowd sale.

**6. RELATIONSHIP OF PARTIES.** It is understood by the parties that Consultant is an independent contractor with respect to Squeeze, and not an employee of Squeeze. Squeeze will not provide fringe benefits, including health insurance benefits, paid vacation, or any other employee benefit, for the benefit of Consultant.

**7. EMPLOYEES.** Consultant's employees, if any, who perform services for Squeeze under this Agreement shall also be bound by the provisions of this Agreement.

**8. RETURN OF RECORDS.** Upon termination of this Agreement, Consultant shall deliver all records, notes, data, memoranda, models, and equipment of any nature that are in Consultant's possession or under Consultant's control and that are Squeeze's property or relate to Squeeze's business.

**9. NOTICES.** All notices required or permitted under this Agreement shall be in writing and shall be deemed delivered when delivered in person or deposited in the United States mail, postage prepaid, addressed as follows:

IF for Squeeze:

Squeeze. LLC
Elias Janetis
Owner
901 NW 35th Street
Boca Raton, Florida 33431

IF for Consultant:

Biricik LLC
1580 se 8th st
Deerfield Beach, Florida 33441

Such address may be changed from time to time by either party by providing written notice to the

other in the manner set forth above.

**10. ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.

**11. AMENDMENT.** This Agreement may be modified or amended if the amendment is made in writing and is signed by both parties.

**12. SEVERABILITY.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**13. WAIVER OF CONTRACTUAL RIGHT.** The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

**14. APPLICABLE LAW.** This Agreement shall be governed by the laws of the State of Florida.

**15. ARBITRATION.** Any controversies or disputes arising out of or relating to this Agreement shall be resolved by binding arbitration in accordance with the then-current Commercial Arbitration Rules of the American Arbitration Association. The parties shall select a mutually acceptable arbitrator knowledgeable about issues relating to the subject matter of this Agreement. In the event the parties are unable to agree to such a selection, each party will select an arbitrator and the two arbitrators in turn shall select a third arbitrator, all three of whom shall preside jointly over the matter. The arbitration shall take place at a location that is reasonably centrally located between the parties, or otherwise mutually agreed upon by the parties. All documents, materials, and information in the possession of each party that are in any way relevant to the dispute shall be made available to the other party for review and copying no later than 30 days after the notice of arbitration is served. The arbitrator(s) shall not have the authority to modify any provision of this Agreement or to award punitive damages. The arbitrator(s) shall have the power to issue mandatory orders and restraint orders in connection with the arbitration. The decision rendered by the arbitrator(s) shall be final and binding on the parties, and judgment may be entered in conformity with the decision in any court having jurisdiction. The agreement to arbitration shall be specifically enforceable under the prevailing arbitration law. During the continuance of any arbitration proceeding, the parties shall continue to perform their respective obligations under this Agreement.

**16. SIGNATORIES.** This Agreement shall be signed on behalf of Squeeze by Elias Janetis, Owner and on behalf of Biricik LLC by Cemhan Biricik, CEO and effective as of the date first written above.

Party Receiving Services:

Squeeze. LLC

By: _____
     Elias Janetis
     Owner


Party Providing Services:
Biricik LLC

By: _____
     Cemhan Biricik
     CEO

# MARKETING CONSULTING AGREEMENT

This Marketing Consulting Agreement (the "Agreement") is made effective as of February 08, 2018, by and between Squeeze. LLC ("Squeeze"), of 901 NW 35th Street, Boca Raton, Florida 33431, and Biricik LLC ("Biricik Media"), of 1580 se 8th st deerfield beach, Deerfield Beach, Florida 33441.

Biricik Media has a background in marketing and is willing to provide services to Squeeze based on this background.

Squeeze desires to have services provided by Biricik Media.

Therefore, the parties agree as follows:

**1. DESCRIPTION OF SERVICES.** Beginning on February 08, 2018, Biricik Media will provide the following services (collectively, the "Services"):

Pay per click marketing

## 2. PERFORMANCE OF SERVICES.

   a. Biricik Media shall implement plans and strategies that help Squeeze sell its products or services.

   b. Biricik Media shall conduct research to know the consumer behavior and what motivates consumers' purchase of a product. Biricik Media shall use that research to design approaches specific to Squeeze's needs.

   c. Biricik Media shall interact with the sales and product teams to determine the marketing strategy.

   d. Biricik Media shall take steps to organize marketing events like exhibitions, competitions, road shows, seminars.

   e. Biricik Media shall work with the public relations team to review branding, positioning of Squeeze's ads to make sure that the ads have an impact on the public.

The manner in which the Services are to be performed and the specific hours to be worked by Biricik Media shall be determined by Biricik Media. Squeeze will rely on Biricik Media to work as many hours as may be reasonably necessary to fulfill Biricik Media's obligations under this Agreement.

**3. PAYMENT.** Squeeze will pay a fee to Biricik Media for the Services in the amount of $18,000.00. This fee shall be payable in a lump sum Due immediately.

**4. COMMISSION PAYMENTS.** In addition to the payments under the preceding paragraph, Squeeze will make commission payments to Biricik Media based on 10% of Advertising budget above $180,000. For the purposes of this Agreement, Advertising budget above $180,000 means total advertising budget including PPC and banner ads

*Payment Schedule.* The commission payments shall be payable every two weeks, no later than 5 days after the end of each applicable two-week period during which Services were performed.

*Accounting.* Squeeze shall maintain records in sufficient detail for purposes of determining the amount of the commission. Squeeze shall provide to Biricik Media a written accounting that sets forth the manner in which the commission payment was calculated.

*Right to Inspect.* Biricik Media, or Biricik Media's agent, shall have the right to inspect Squeeze's records for the limited purpose of verifying the calculation of the commission payments, subject to such restrictions as Squeeze may reasonably impose to protect the confidentiality of the records. Such inspections shall be made during reasonable business hours as may be set by Squeeze.

**5. SUPPORT SERVICES.** Squeeze will provide the following support services for the benefit of Biricik Media:

- Office space
- Support staff
- Media Content
- Editorial and technical content

**6. TERM/TERMINATION.** This Agreement shall terminate automatically upon completion by Biricik Media of the Services required by this Agreement.

**7. RELATIONSHIP OF PARTIES.** It is understood by the parties that Biricik Media is an independent contractor with respect to Squeeze, and not an employee of Squeeze. Squeeze will not provide fringe benefits, including health insurance benefits, paid vacation, or any other employee benefit, for the benefit of Biricik Media.

**8. EMPLOYEES.** Biricik Media's employees, if any, who perform services for Squeeze under this Agreement shall also be bound by the provisions of this Agreement.

**9. NOTICES.** All notices required or permitted under this Agreement shall be in writing and shall be deemed delivered when delivered in person or deposited in the United States mail, postage prepaid, addressed as follows:

IF for Squeeze:

    Squeeze. LLC
    Elias Janetis
    Owner
    901 NW 35th Street
    Boca Raton, Florida 33431

IF for Biricik Media:

    Biricik LLC
    Cemhan Biricik
    CEO
    1580 se 8th st deerfield beach
    Deerfield Beach, Florida 33441

Such address may be changed from time to time by either party by providing written notice to the other in the manner set forth above.

**10. ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.

**11. AMENDMENT.** This Agreement may be modified or amended if the amendment is made in writing and is signed by both parties.

**12. SEVERABILITY.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**13. WAIVER OF CONTRACTUAL RIGHT.** The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

**14. APPLICABLE LAW.** This Agreement shall be governed by the laws of the State of Florida.

**15. ARBITRATION.** Any controversies or disputes arising out of or relating to this Agreement shall be resolved by binding arbitration in accordance with the then-current Commercial Arbitration Rules of the American Arbitration Association. The parties shall select a mutually acceptable arbitrator knowledgeable about issues relating to the subject matter of this Agreement. In the event the parties are unable to agree to such a selection, each party will select an arbitrator and the two arbitrators in turn shall select a third arbitrator, all three of whom shall preside jointly

This is a RocketLawyer.com document.
Composite Exhibit "A"

Page 3 of 5

over the matter. The arbitration shall take place at a location that is reasonably centrally located between the parties, or otherwise mutually agreed upon by the parties. All documents, materials, and information in the possession of each party that are in any way relevant to the dispute shall be made available to the other party for review and copying no later than 30 days after the notice of arbitration is served. The arbitrator(s) shall not have the authority to modify any provision of this Agreement or to award punitive damages. The arbitrator(s) shall have the power to issue mandatory orders and restraint orders in connection with the arbitration. The decision rendered by the arbitrator(s) shall be final and binding on the parties, and judgment may be entered in conformity with the decision in any court having jurisdiction. The agreement to arbitration shall be specifically enforceable under the prevailing arbitration law. During the continuance of any arbitration proceeding, the parties shall continue to perform their respective obligations under this Agreement.

**16. SIGNATORIES.** This Agreement shall be signed on behalf of Squeeze by Elias Janetis, Owner and on behalf of Biricik LLC by Cemhan Biricik, CEO and effective as of the date first written above.

Party Receiving Services:
Squeeze. LLC

By: _____
    Elias Janetis
    Owner

Party Providing Services:
Biricik LLC

By: _____
    Cemhan Biricik
    CEO

This is a RocketLawyer.com document.
Composite Exhibit "A"

Page 4 of ·

## TOKEN Development Agreement

This Token Development Agreement (this "Agreement") is made effective as of February 08, 2018, by and between SQUEEZE. LLC (the "Client"), of 901 NW 35th Street, Boca Raton, Florida 33431, and Biricik LLC (the "Token Developer"), of 1580 se 8th st, Deerfield Beach, Florida 33441. In this Agreement, the Client shall be referred to as "Squeeze", and the Token Developer shall be referred to as "Token developer".

WHEREAS, Token developer possesses technical expertise in the field of computer programming and, in particular, the creation and development of ethereum token technology; and

WHEREAS, Squeeze desires to engage Token developer, and Token developer accepts the engagement, to design a custom ethereum token (the "Token code Project") in accordance with the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, Squeeze and Token developer agree as follows:

**RETENTION OF DEVELOPER.** Squeeze hereby retains the services of Token developer for the Token code Project to be published on the ethereum blockchain

**DESCRIPTION OF SERVICES.** Beginning on February 08, 2018, Token developer will provide the following services connected with the development of the Ethereum Token (collectively, the "Services"):

Custom Token code creation and Crowd sale custom code creation

**PAYMENT FOR SERVICES.** In consideration of the services to be performed by Token developer, Squeeze agrees to compensate Token developer for the services rendered as follows:

Token developer's fees for the services specified in Description of Services, above, will be charged at a rate of $35,000.00 plus 8% of the total max supply of squeeze tokens, payable on Token developer's start of the services specified in Description of Services.

Any additional services not specified in Description of Services, above, will be charged to Squeeze on an hourly rate basis at Token developer's standard rate of $350.00 per hour.

Squeeze will be required to pay Token developer upon accepting the contract.

**TERM/TERMINATION.** This Agreement shall terminate according to the following arrangement:

This is a RocketLawyer.com document.
Composite Exhibit "A"

Page 1 of 5

This agreement will terminate upon completion of token and crowd sale code

**RELATIONSHIP OF PARTIES.** It is understood by the parties that Token developer is an independent contractor with respect to Squeeze, and not an employee of Squeeze. Squeeze will not provide fringe benefits, including health insurance benefits, paid vacation, or any other employee benefit, for the benefit of Token developer.

**WORK PRODUCT OWNERSHIP.** Any copyrightable works, ideas, discoveries, inventions, patents, products, or other information (collectively, the "Work Product") developed in whole or in part by Token developer in connection with the Services shall be the exclusive property of Squeeze. Upon request, Token developer shall sign all documents necessary to confirm or perfect the exclusive ownership of Squeeze to the Work Product.

**LAWS AFFECTING ELECTRONIC COMMERCE.** Squeeze agrees that Squeeze is solely responsible for complying with laws, taxes, and tariffs that governments enact and fix from time to time in connection with Internet electronic commerce, and shall indemnify, hold harmless, protect, and defend Token developer and its subcontractors from any cost, claim, suit, penalty, or tariff, including attorneys' fees, costs, and expenses, arising from Squeeze's exercise of Internet electronic commerce.

**CONFIDENTIALITY.** Token developer will not at any time or in any manner, either directly or indirectly, use for the personal benefit of Token developer, or divulge, disclose, or communicate in any manner any information that is proprietary to Squeeze. Token developer will protect such information and treat it as strictly confidential. This provision shall continue to be effective after the termination of this Agreement. Upon termination of this Agreement, Token developer will return to Squeeze all records, notes, documentation and other items that were used, created, or controlled by Token developer during the term of this Agreement.

**EMPLOYEES.** Token developer's employees, if any, who perform services for Squeeze under this Agreement shall also be bound by the provisions of this Agreement. At the request of Squeeze, Token developer shall provide adequate evidence that such persons are Token developer's employees.

**ASSIGNMENT.** Token developer's obligations under this Agreement may not be assigned or transferred to any other person, firm, or corporation without the prior written consent of Squeeze.

**ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement whether oral or written.

**SEVERABILITY.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**AMENDMENT.** No amendment, waiver, or discharge of any provision of this Agreement shall be effective against Squeeze or Token developer without the written consent of both Squeeze and Token developer.

**NOTICES.** Any notice required to be given pursuant to this Agreement shall be in writing and mailed by certified or registered mail, to the addresses mentioned above.

**APPLICABLE LAW.** This Agreement shall be governed by the laws of the State of Florida.

**SIGNATURES.** This Agreement shall be signed by Elias Janetis, Owner on behalf of Squeeze and by Cemhan Biricik, CEO on behalf of Biricik LLC. This Agreement is effective as of the date first above written.

CLIENT:
Squeeze

By: _____

Elias Janetis
Owner

TOKEN DEVELOPER:
Biricik LLC

By: _____

Cemhan Biricik
CEO

74k

Biricik LLC
1580 SE 8th Street
Deerfield Beach, Florida 33441
iceepc@gmail.com

# Invoice

| Invoice Number: | 76588 |
| --- | --- |
| Invoice Date: | |
| Payment Terms: | Due On Receipt |
| Invoice Amount: | 148,000.00 |
| Created By: | Cemhan Biricik |

**Bill To**
Squeeze LLC

**Ship To**
Boca Raton, FL

| | | | | |
| --- | --- | --- | --- | --- |
| 1023 | White Paper and ICO Website creation We create the code, visuals, and layout for your ICO crowd sale website and white paper. | 1.00 | 15,000.00 | 15,000.00 |
| 1024 | Coin creation custom code This will be the custom Squeeze coin. Running on the Ethereum blockchain using the most up to date code seamlessly connected to your crowd sale smart contract code. | 1.00 | 15,000.00 | 15,000.00 |
| 1025 | Crowd sale custom code A smart contract on the Ethereum blockchain that dictates the terms of the crowd sale. Parameters like who gets the payments, how many coins they get per purchase, and the time limit of the crowd sale. This code works simultaneously through your crowd sale website. Think of it as a back end Ethereum blockchain shopping cart database. | 1.00 | 20,000.00 | 20,000.00 |
| 1027 | Marketing: including SMM SEO SEM Search engine optimization, Social media marketing, Search engine marketing, Community development, and organic marketing fine tuned for an ICO investor and all pointing to your ICO crowd sale. | 1.00 | 65,000.00 | 65,000.00 |
| 1026 | PPC Commission Commission paid for advertising on Facebook, Google, Banner ads etc. up to $180000 | 1.00 | 18,000.00 | 18,000.00 |
| 1028 | Smart contract audit We have a third party cybersecurity company test for vulnerabilities prior to launch | 1.00 | 15,000.00 | 15,000.00 |

Coin Leverage 8%   — EXHIBIT "B"   —

Exhibit "B"

| 1029 | We set aside 10% of your new Squeeze coin and allocate it to the team involved in its creation. We find this turns the whole team into a free marketing asset and keeps the coding costs down as well. | 1.00 | 0.00 | 0.00 |

**Comments:**

50% deposit due on receipt.
Remaining balance due as per contracts

| | |
|---|---|
| Subtotal: | $ 148,000.00 |
| Invoice Amount | $ 148,000.00 |

Exhibit "B"



**ABIDING VENTURES, LLC**
6503 VIA ROSA
BOCA RATON, FL 33433-6489

9-32/720

DATE 1·8·18

PAY TO THE
ORDER OF    Biricik , LLC                    $ 74,000.⁰²

Seventy - four thousand dalla 00 ⁰⁰ DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO Squeeze Token

MP

Account: 
Amount: 74,000.00
PostDate: 20180208
Tran_ID: 
CheckNum: 0
DIN: 
ReturnReasonCode:
ReturnReasonDescription:
Orig_DIN: 
ECEItemSeqNum: 

20180208 000000000
TRN_DEBIT     MBASTAN         0000
Deerfield Beach 10th

Account: 
Amount: 74,000.00
PostDate: 20180208
Tran_ID: 
CheckNum: 0
DIN: 
ReturnReasonCode:
ReturnReasonDescription:
Orig_DIN: 
ECEItemSeqNum: 

Exhibit "C"

## Harley Storrings

**From:**      Elias Janetis <elias@squeeze.com>
**Sent:**      Thursday, March 22, 2018 9:19 AM
**To:**        Harley Storrings
**Subject:**   Fwd: ICO

---------- Forwarded message ----------
From: **Elias Janetis** <elias@squeeze.com>
Date: Mon, Mar 5, 2018 at 6:53 PM
Subject: ICO
To: Blockchain Global <info@bgtnow.com>, Brent Campbell <brent@squeeze.com>

Han,

I have consulted with an attorney whom I greatly respect and who's been researching ICO's for over a year.  He believes strongly that we will be violating securities law issuing a token in the manner that you've suggested.

I have a responsibility to my investors, team, and my family to protect the resources that the Lord has given me.

Having said this, I am very disappointed to say that we need to halt any and all ICO related activities and meet tomorrow to discuss unwinding this process for the time being.  I need to wait until there is specific guidance from the SEC so that we can do things right and proper.  I can not do shortcuts and risk the reputation and opportunity that I have with Squeeze.

I know you said before we got started that if I needed to back out you would refund 100% of our money.  I would like to compensate you though for your energies up to this point.  Let's meet tomorrow to discuss.

Best regards,

Elias Janetis



EXHIBIT D

1

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO:

SQUEEZE, LLC,

a Florida limited liability company,

      Plaintiff,

vs.

BIRICIK, LLC, a Florida limited
liability company, and CEMHAN
BIRICIK, an individual,

      Defendants.

_____/

## COMPLAINT

Plaintiff, SQUEEZE, LLC, a Florida limited liability company (hereinafter referred to as "Squeeze" or "Plaintiff"), by and through its undersigned counsel, files its Complaint ("Complaint") and sues Defendants, BIRICIK, LLC, a Florida limited liability company ("Biricik") and CEMHAN BIRICIK, an individual ("Mr. Biricik") (collectively Biricik and Mr. Biricik are referred to herein as "Defendants"), and alleges as follows:

## PARTIES, VENUE AND JURISDICTION

1.      This is a complaint for damages in excess of $15,000.00, exclusive of interest, fees and costs.

2.      Plaintiff is a Florida limited liability company with its principal place of business located in Palm Beach County, FL.

3.      Defendant, Biricik, is a Florida limited liability company with its principal place of business located in Broward County, FL.

4.     Defendant, Mr. Biricik, is an individual residing in Broward County, Florida.

5.     Venue is proper in Palm Beach County, Florida, pursuant to Fla. Stat. §§ 47.011 and 47.041 because the causes of action accrued in Palm Beach County, FL.

## GENERAL ALLEGATIONS

6.     Squeeze operates an online website and app that allows consumers the ability to compare recurring services, find promotional coupons, and track their spending.

7.     Defendants market themselves as, among other things, specialists in cryptocurrency consulting, investing and Initial Coin Offering ("ICO") creation.

8.     In late January/early February 2018, Mr. Biricik had ongoing negotiations with management at Squeeze to discuss whether Squeeze could benefit from creating an ICO, and if so, whether this was something the Defendants could assist Squeeze with implementing.

9.     During the course of those negotiations, Mr. Biricik told management at Squeeze, repeatedly, that he was well-versed in ICO creation, that the consultancy work he was proposing to Squeeze was legal and did not violate any securities laws, and that if at any time Squeeze was dissatisfied with Defendants' work, he would promptly refund any amount paid to Defendants for their services.

10.     Based upon these representations, on or about February 8, 2018, Squeeze entered into a series of agreements with Biricik, all of which related to Biricik's assistance with developing an ICO on behalf of Squeeze.  The agreements specifically included the following:

- An ICO Website Design Agreement ("WDA"), pursuant to which Biricik agreed to create an ICO crowd sale website;

- ICO Marketing Consulting Agreements (collectively "MCA"), pursuant to which Biricik agreed to provide certain marketing services on behalf of Squeeze; and

Exhibit "E"

CASE NO:

- A TOKEN Development Agreement ("TDA") pursuant to which Biricik agreed, among other things, to (a) "design a custom Ethereum Token" on behalf of Squeeze, and (b) provide "Crowd sale custom code creation."

Copies of the WDA, MCA and TDA (collectively referred to herein as the "Agreements") are attached as Composite Exhibit "A."

11.     In connection with these services, Defendants issued an invoice to Squeeze dated February 6, 2018 in the total amount of $148,000.00, of which 50% was "due upon receipt."  A copy of this invoice is attached as Exhibit "B."

12.     Based upon Defendants' repeated assurances that the ICO did not violate state or federal securities laws, Squeeze executed the Agreements and paid Defendants an initial deposit of $74,000.00.

13.     Shortly thereafter, Squeeze discussed the proposed ICO in greater detail with legal counsel, and Squeeze discovered that the Defendants' proposed ICO was a violation of both state and federal securities laws.

14.     Therefore, on or about March 5, 2018, Squeeze's manager, Elias Janetis ("Mr. Janetis"), sent an email to Mr. Biricik explaining the foregoing and advising that Squeeze was therefore not going to move forward with the proposed ICO.  A copy of the letter is attached as Exhibit "C."  Plaintiff also requested that Defendants return the initial deposit that Squeeze had previously paid.

15.     Unfortunately, despite Plaintiff's repeated demands for the return of its initial deposit, Defendants have failed to respond and failed to return Squeeze's initial deposit.

16.      All conditions precedent to bringing this action, if any, have occurred or have been performed, waived or excused.

Exhibit "E"

CASE NO:

## COUNT I
## RESCISSION OF THE AGREEMENTS

17.     Plaintiff adopts and incorporates paragraphs 1 through 17 above, as if fully set forth herein.

18.     In late January/early February 2018, Mr. Biricik had ongoing negotiations with management at Squeeze to discuss whether Squeeze could benefit from creating an ICO, and if so, whether this was something the Defendants could assist Squeeze with.

19.     During the course of those negotiations, Mr. Biricik told management at Squeeze, repeatedly, that he was well-versed in ICO creation, that the consultancy work he was proposing to Squeeze was legal and did not violate any securities laws, and that if at any time Squeeze was dissatisfied with Defendants' work, he would promptly refund any amount paid to him for his services.

20.     Based upon these representations, on or about February 8, 2018, Squeeze entered into the Agreements, copies of which are attached as Composite Exhibit "A."

21.     The Agreements all pertain to Biricik's assistance with developing an ICO on behalf of Squeeze.

22.     In connection with these services, Defendants issued an invoice to Squeeze dated February 6, 2018 in the total amount of $148,000.00, of which 50% was "due upon receipt."  A copy of this invoice is attached as Exhibit "B."

23.     Based upon Defendants' repeated assurances that the ICO did not violate state or federal securities laws, Squeeze executed the Agreements and paid Defendants an initial deposit of $74,000.00.

24.     Shortly thereafter, Squeeze discussed the proposed ICO in greater detail with legal counsel, and Squeeze discovered that the Defendants' proposed ICO was a violation of both state

4

and federal securities laws.

25.    Therefore, on or about March 5, 2018, Squeeze's manager, Mr. Janetis, sent an email to Mr. Biricik explaining the foregoing and advising that Squeeze was therefore not going to move forward with the proposed ICO.  Plaintiff also requested that Defendants return the initial deposit that Squeeze had previously paid.

26.    Unfortunately, despite Plaintiff's repeated demands for the return of its initial deposit, Defendants have failed to respond and failed to return Squeeze's initial deposit.

27.    But for Defendants' numerous misrepresentations regarding the legality of the proposed ICO, Plaintiff would never have entered into the Agreements.

28.    Because the ICO proposed by Defendants is illegal, the Agreements should be rescinded and Defendants should be compelled to return Squeeze's initial deposit of $74,000.00.

WHEREFORE, Plaintiff, SQUEEZE, LLC, respectfully requests this Court to rescind the Agreements and order that Defendants, BIRICIK, LLC and CEMHAN BIRICIK promptly return Squeeze's initial deposit, along with awarding such other and further relief that it deems just and proper.

### COUNT II
### <u>FRAUDULENT INDUCEMENT</u>

29.    Plaintiff adopts and incorporates paragraphs 1 through 17 above, as if fully set forth herein.

30.    In late January/early February 2018, Mr. Biricik had ongoing negotiations with management at Squeeze to discuss whether Squeeze could benefit from creating an ICO, and if so, whether this was something the Defendants could assist Squeeze with.

31.    During the course of those negotiations, Mr. Biricik told management at Squeeze,

CASE NO:

including Mr. Janetis, on several occasions, that he was well-versed in ICO creation, that the consultancy work he was proposing to Squeeze was legal and did not violate any securities laws, and that if at any time Squeeze was dissatisfied with Defendants' work, he would promptly refund any amount paid to him for his services.

32.     Based upon Defendants' repeated assurances that the ICO did not violate state or federal securities laws, Squeeze executed the Agreement and paid Defendants an initial deposit of $74,000.00.

33.     Shortly thereafter, Squeeze discussed the proposed ICO in greater detail with legal counsel, and Squeeze discovered that the Defendants' proposed ICO was a violation of both state and federal securities laws.

34.     Therefore, on or about March 5, 2018, Squeeze's manager, Mr. Janetis, sent an email to Mr. Biricik explaining the foregoing and advising that Squeeze was therefore not going to move forward with the proposed ICO.  Mr. Janetis also requested that Defendants return the initial deposit that Squeeze had previously paid.

35.     Unfortunately, despite Plaintiff's repeated demands for the return of its initial deposit, Defendants have failed to respond and failed to return Squeeze's initial deposit.

36.     But for the Defendants' numerous misrepresentations regarding the legality of the proposed ICO, Plaintiff would never have entered into the Agreements.

37.     Defendants knew of the falsity of their representations to Squeeze, and they made the representations with the specific intent of inducing Squeeze to pay them an initial deposit of $74,000.00.

38.     Squeeze reasonably relied upon Mr. Biricik's representations and fully complied with its obligations.

Exhibit "E"

CASE NO:

39.     As a result of Defendants' actions, Squeeze has suffered damages.

WHEREFORE, Plaintiff, SQUEEZE, LLC, demands judgment against Defendants, BIRICIK, LLC and CEMHAN BIRICIK, for damages, interest and costs, together with such other and further relief deemed just, equitable and proper.

### COUNT III
### CONVERSION

40.     Plaintiff adopts and incorporates paragraphs 1 through 17 above, as if fully set forth herein.

41.     Because the ICO proposed by Defendants is illegal, the Agreements are, by operation of law, void *ab initio*, and Plaintiff is entitled to the return of its $74,000.00 initial deposit.

42.     Notwithstanding the foregoing, Defendants have failed to return Plaintiff's initial deposit, and instead, have converted these funds to their own use.

43.     Plaintiff has retained the undersigned attorneys to represent it in this action and is required to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff, SQUEEZE, LLC, demands judgment against Defendants, BIRICIK, LLC and CEMHAN BIRICIK, for damages, interest and costs, together with such other and further relief deemed just, equitable and proper.

### COUNT IV
### UNJUST ENRICHMENT

44.     Plaintiff adopts and incorporates paragraphs 1 through 17 above, as if fully set forth herein.

45.     Because the ICO proposed by Defendants is illegal, the Agreements are, by operation of law, void *ab initio*, and Plaintiff is entitled to the return of its $74,000.00 initial

Exhibit "E"

CASE NO:

deposit.

46.     By failing to return Plaintiff's initial deposit, Defendants have been unjustly enriched and Plaintiff has been impoverished.

47.     Plaintiff has retained the undersigned attorneys to represent it in this action and is required to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff, SQUEEZE, LLC, demands judgment against Defendants, BIRICIK, LLC and CEMHAN BIRICIK, for damages, interest and costs, together with such other and further relief deemed just, equitable and proper.

Dated: April 9, 2018.

Respectfully submitted

**STORRINGS LAW**
*Counsel for Plaintiff*
10100 West Sample Road, Suite 300
Coral Springs, FL 33065
Telephone: (954) 302-7148
Fax: (954) 358-4064
Email: harley@storringslaw.com
         Agnes@storringslaw.com

By: /s/ Harley J. Storrings
        Harley J. Storrings
        Florida Bar No. 870641

Please Note: Exhibits to the State Court Complaint are already contained in Exhibits "A", "B" and "D" to this Adversary Complaint

Filing # 84336876 E-Filed 02/04/2019 09:35:56 AM

CFN 20190043294
OR BK 30404 PG 343
RECORDED 02/06/2019 15:25:12
Palm Beach County, Florida
AMT
Sharon R. Bock
CLERK & COMPTROLLER
Pgs 0343-0344; (2Pgs)

CFN 20190066374
OR BK 30438 PG 1695
RECORDED 02/26/2019 12:31:12
Palm Beach County, Florida
Sharon R. Bock,CLERK & COMPTROLLER
Pgs 1695 - 1696; (2Pgs)

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO:    502018CA004290XXXXMB

SQUEEZE, LLC,

a Florida limited liability company,

    Plaintiff,

vs.

BIRICIK, LLC, a Florida limited liability company, and CEMHAN BIRICIK, an individual,

    Defendants.

_____/

## FINAL JUDGMENT AGAINST DEFENDANT, BIRICIK, LLC (ONLY) @

THIS MATTER came before the Court upon Plaintiff, SQUEEZE, LLC's Motion for Entry of Final Default Judgment, and the Court having reviewed the file, having heard argument of counsel, and being otherwise fully advised in the premises, it is hereby:

ORDERED AND ADJUDGED as follows:

a.    Plaintiff, SQUEEZE, LLC (located at 901 NW 35th Street, Boca Raton 33431), shall recover from Defendant, BIRICIK, LLC (FEI/EIN Number 45-5034531, located at 1580 SE 8th Street, Deerfield Beach, FL 33441), the principal amount of $74,000.00, and costs in the amount

·1

CASE NO:    502018CA004290XXXXMB

of $1,690.73, for a total amount of $75,690.73, which shall bear interest at the statutory rate (currently 6.33% interest per annum).

       b.     Defendant, BIRICIK, LLC, shall complete under oath Florida Rule of Civil Procedure Form 1.977(b) (Fact Information Sheet for Corporations and Other Business Entities), including all required attachments, and serve same on Plaintiff's counsel within 45 days of this Final Judgment, unless the Final Judgment is satisfied prior to that time.

       c.     This Final Judgment is against Defendant, BIRICIK, LLC only, and the Court retains jurisdiction of this action.

     DONE and ORDERED in Palm Beach County, this _____ day of February 2019.

CIRCUIT JUDGE

Copies furnished to:

Harley J. Storrings, Esq., 10100 West Sample Road, Suite 300, Coral Springs, FL 33065, E-mail: harley@storringslaw.com; assistant@storringslaw.com;

Cemhan Biricik, 7050 W. Palmetto Park Road, No. 15177, Boca Raton, FL 33433, E-mail: iceepc@gmail.com

2



I hereby certify the foregoing is a true copy of the record in my office with redactions, if any, as required by law as of this day, Feb 26, 2019.
Sharon R. Bock, Clerk and Comptroller, Palm Beach County, Florida
BY _____ Exhibit "F" _____ Deputy Clerk

IN THE CIRCUIT COURT FOR THE FIFTEENTH
JUDICIAL CIRCUIT, IN AND FOR PALM BEACH
COUNTY, FLORIDA


SQUEEZE, LLC,
a Florida limited liability company,

      Plaintiff,

vs.

BIRICIK, LLC, a Florida limited
liability company, and CEMHAN
BIRICIK, individually, jointly and       CASE NO: 502018CA004290XXXXMB
severally,

      Defendants,
_____/

### FINAL JUDGMENT AGAINST DEFENDANT CEMHAN BIRICIK

      THIS CAUSE came before this Court for a one-day bench trial on June 4, 2020 on Plaintiff, SQUEEZE, LLC's ("Plaintiff") Complaint against Defendant, CEMHAN BIRICIK ("Mr. Biricik") alleging (a) Fraudulent Inducement against Mr. Biricik (Count II); (b) Conversion against Mr. Biricik (Count III); and (c) Unjust Enrichment against Mr. Biricik.[1] Having observed all witness testimony at trial, having reviewed the exhibits offered into evidence at trial, having heard argument of counsel, and being fully apprised in the premises, this Court finds as follows:

      1.      Preliminarily, the Court notes that this non-jury trial was held remotely through Zoom videoconference technology. Mr. Biricik did not appear at trial despite the fact that, among other things, (a) an email was sent out at the direction of this Court from CAD-DivisionAG@pbcgov.org to Plaintiff's counsel and to Mr. Biricik at the email he provided to the Court (iceepc@gmail.com) on May 14, 2020 advising all recipients, including Mr. Biricik, that this matter has been set per the E-Calendar Call form on the Division AG website posted trial docket and to review the court's trial docket to see when the case was set for trial; and (b) the Court Reporting Agency that hosted the Zoom videoconference (U.S. Legal Support) sent an email to all parties, including Mr. Biricik (at iceepc@gmail.com) in which it provided the date of trial, the starting time of trial, and a link to attend trial.

      2.      Based upon the testimony that was provided at trial, this Court hereby enters Final

Case No. 50-2018-CA-004290-XXXX-MB

Judgment in favor of Plaintiff, SQUEEZE, LLC (901 NW 35th Street, Boca Raton, FL 33431; FEI/EIN Number 47-5581141) and against Defendant, CEMHAN BIRICIK (6398 Amberwoods Drive, Boca Raton, FL 33433) on Plaintiff's claims for (a) Fraudulent Inducement against Mr. Biricik (Count II); (b) Conversion against Mr. Biricik (Count III); and (c) Unjust Enrichment against Mr. Biricik.

3.      Although Plaintiff was seeking principal damages against Mr. Biricik in the amount of Seventy-Four Thousand Dollars ($74,000.00), based upon the evidence presented, this Court finds that Plaintiff's principal damages are Seventy-Two Thousand Dollars ($72,000.00).

4.      The Court further finds that Plaintiff is entitled to recover its reasonable costs from Mr. Biricik, and based upon the Affidavit provided by Plaintiff, this Court finds that Plaintiff is entitled to recover costs from Mr. Biricik in the amount of $4,025.81.

5.      Therefore, the total amount of this Final Judgment is $76,025.81, which shall bear interest at the statutory rate (currently 6.66% interest per annum).

6.      Defendant, CEMHAN BIRICIK, shall complete under oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet for Individuals), including all required attachments, and serve same on Plaintiff's counsel within 45 days of Plaintiff's attorney mailing and emailing said form to Defendant, unless the Final Judgment is satisfied prior to that time.

DONE AND ORDERED in Palm Beach County, Florida.


FINAL DISPOSITION FORM
(Fla.R.Civ.P. Form 1.998)
THE CLERK IS DIRECTED TO CLOSE THIS FILE
MEANS OF FINAL DISPOSITION
Disposed by Non-Jury Trial

50-2018-CA-004290-XXXX-MB    07/09/2020
Donald Hafele   Judge

50-2018-CA-004290-XXXX-MB      07/09/2020
Donald Hafele
Judge

Copies furnished to:

Harley J. Storrings, Esq. and Greg Barthelette, Esq., Storrings Law, 9600 W. Sample Road, Suite 206, Coral Springs, FL 33065, email: Harley@storringslaw.com; Greg@storringslaw.com; and Assistant@storringslaw.com; and

Cemhan Biricik, 6398 Amberwoods Drive, Boca Raton, FL 33433, email: iceepc@gmail.com.

1   Count I of Plaintiff's Complaint for Rescission of Agreements is moot as it was previously resolved by virtue of this Court's Final Judgment in favor of Plaintiff and against Defendant, BIRICIK, LLC dated February 1, 2019.