

ORDERED in the Southern District of Florida on September 16, 2021.

**Mindy A. Mora, Judge
United States Bankruptcy Court**

___

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No.: 20-19507-BKC-MAM |
| Cemhan Biricik and Isabel C. Biricik, | Chapter 7 |
| Debtor(s). / | |
| Squeeze, LLC and Abiding Ventures, LLC, | Adv. Proc. No.: 20-01404-MAM |
| Plaintiff(s), | |
| v. | |
| Cemhan Biricik and Isabel C. Biricik, | |
| Defendant(s). / | |

### MEMORANDUM OPINION DENYING MOTION FOR SUMMARY JUDGMENT (ECF NO. 20)[1]

---

[1] At a status conference held on July 14, 2021 at 10:00 a.m., the Court issued a detailed oral ruling ("Oral Ruling") upon the Motion. *See* ECF No. 34. Later that same day, the Court of Appeals for the Eleventh Circuit published its memorandum opinion in *Harris v. Jayo (In re Harris)*, 3 F.4th 1339 (11th Cir. 2021) analyzing virtually identical issues of fact and law. The Court now publishes this

Plaintiffs Squeeze, LLC ("Squeeze") and Abiding Ventures, LLC ("AV", and collectively with Squeeze, "Plaintiffs") filed a motion for summary judgment (ECF No. 20) (the "Motion") seeking summary judgment solely as to Count 3 of the underlying Complaint, and only as to Cemhan Biricik.[2] To clarify the universe of facts and law upon which Plaintiffs sought summary judgment, the Court entered an order (ECF No. 24) (the "Briefing Order") directing briefing upon the Motion. Cemhan filed a Response at ECF No. 30, Plaintiffs filed a Reply at ECF No. 31, and all parties submitted a Joint Stipulation of Facts at ECF No. 32.

The Briefing Order required pinpoint citations to the record for any relevant issues of fact and cautioned the parties that "[f]ailure to provide the Court with clear, accurate, and precise citations may result in the Court striking the relevant factual or legal assertions."[3] Although the briefing submitted was cogently drafted, this level of precision did not occur. As a result, the Court was forced to hopscotch through the record trying to fill in the factual gaps in the Joint Stipulation to arrive at its ruling.

It has been the Court's experience that, when litigants fail to provide the Court with clear, detailed, and precise citations to the record, summary judgment is almost always inappropriate. This Adversary Proceeding does not provide an exception to

---

memorandum opinion to confirm that the Oral Ruling aligned with the Eleventh Circuit's *Harris* opinion.

[2] Mr. Biricik is one of two married debtors with the same last name in the chapter 13 bankruptcy case affiliated with this Adversary Proceeding. For clarity, the Court will refer to Mr. Cemhan Biricik and Ms. Isabel Biricik by their first names. No disrespect is intended to Mr. or Mrs. Biricik by the Court's informality.

[3] ECF No. 24, ¶ 4.

that rule. More importantly, the absence of precise citations impeded the Court's ability to efficiently weigh and consider the issues presented by the Motion.

## BACKGROUND

Count 3 of Plaintiffs' Complaint seeks a determination of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A) ("§ 523(A)(2)(A)"). The pertinent obligation is linked to a business dispute involving several agreements (the "Agreements") between Squeeze LLC and an entity known as "Biricik LLC". Because the facts are a bit convoluted, the Court will describe the undisputed facts set forth in the Joint Stipulation in the simplest context possible, augmenting with facts from the record to the extent that those facts apply and appear to be undisputed.

Before launching into the full history, the Court acknowledges that Biricik LLC, the business entity that contracted with Squeeze, is neither a debtor in this Court nor a defendant to this Adversary Proceeding. Paragraph 5 of the Joint Stipulation states that Biricik LLC is now inactive. That same paragraph provides that Isabel, not Cemhan, was the sole owner and member of the contracting entity, Biricik LLC.

From this point forward, setting forth the essential facts becomes difficult, as many remain unclear. The Joint Stipulation points out that AV paid an initial deposit ("Deposit") "on behalf of" Squeeze as part of the business dealings memorialized by the Agreements.[4] It does not, however, clarify what relationship AV has or had to Squeeze other than common ownership through Elias Janetis ("Janetis").

---

[4] ECF No. 32, ¶ 10.

Janetis later apparently demanded a return of the Deposit paid by AV. In his demand, Janetis asserted that his own independent research indicated that the business dealings for which Squeeze had engaged Biricik LLC were not permitted by law. Neither the Joint Stipulation nor the Motion explain why this due diligence was not conducted prior to AV's payment of the Deposit. The Joint Stipulation also does not explain what benefit, if any, AV received as a result of its payment of the Deposit. The parties seem to agree that the Deposit was not refunded.

To put matters in context, the Court will quickly summarize the essential thrust of the Adversary Complaint. The Complaint alleges that the Agreements between Squeeze LLC and Biricik LLC gave rise to contested obligations that, in turn, led to entry of a "Final Judgment of Default" against Cemhan (the "<u>Cemhan Judgment</u>"). The Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "<u>State Court</u>") entered the Cemhan Judgment in Case No. 502018CA004290XXXXMB on July 9, 2020 after Cemhan failed to appear at a trial held on June 4, 2020.[5] Including costs, the full amount of the Cemhan Judgment is $76,025.91.

To ensure that the record is clear, the Court will explain that the Cemhan Judgment is not to be confused with a final judgment previously entered by the State Court against Biricik LLC on February 1, 2019 (the "<u>Biricik Judgment</u>").[6]

---

[5] *See* Exhibit "G" to the Motion. The Cemhan Judgment resolved Squeeze's State Court claims of fraudulent inducement, conversion and unjust enrichment. It also permitted Squeeze to assess the litigation costs against Cemhan.

[6] *See* Exhibit "F" to the Motion.

4

Neither the Biricik Judgment nor the Cemhan Judgment contain findings of fact. These judgments do not separate the damages awarded by potential basis of liability, nor do they articulate to what extent each potential basis influenced the final judgment amount.

To summarize, the essential background facts for this Opinion are:

1) Squeeze LLC entered into a series of business agreements with Biricik LLC.
2) Cemhan was neither a member nor an owner of Biricik LLC.
3) AV paid for Squeeze's Deposit, but AV was not a contracting party to the Agreements.
4) Janetis later sought return of the Deposit but was unsuccessful.
5) Plaintiffs filed suit in State Court against both Cemhan and Biricik LLC.
6) Plaintiffs obtained a final judgment against Biricik LLC.
7) The Biricik Judgment contains no findings of fact and does not separate out bases of liability by count or claim.
8) Plaintiffs later obtained a final judgment against Cemhan after he failed to appear at trial.
9) The Cemhan Judgment also contains no findings of fact and does not separate out bases of liability by count or claim.

## PLAINTIFFS' ARGUMENTS

Plaintiffs contend that the res judicata[7] impact of the Cemhan Judgment mandates entry of summary judgment as to Count 3. Plaintiffs generally allege in their Adversary Complaint that Cemhan made false statements during business negotiations between Squeeze and Biricik LLC. Plaintiffs further contend that

---

[7] A precise explanation of the terms "res judicata" and "collateral estoppel" (which is technically a subset of res judicata) is beyond the scope of this Opinion.

unopposed testimony in the State Court trial regarding the falsity of Cemhan's alleged statements led to entry of the Cemhan Judgment.

The Cemhan Judgment is particularly relevant to the Court's analysis today because Plaintiffs' asserted basis for summary judgment is, essentially, that entry of the Cemhan Judgment operates to relieve this Court of its duty to independently investigate the nondischargeability of the underlying debt.

But, as noted before, the Cemhan Judgment contains no findings of fact upon which the Court can rely. To place the judgment in context, the Court referred back to the State Court Complaint to which the Cemhan Judgment relates.[8] The Court observes that the State Court Complaint sought damages against Cemhan based on four legal theories: recission of the Agreements, fraudulent inducement, conversion, and unjust enrichment.

Unfortunately, the Joint Stipulation did not cite with particularity to the State Court Complaint, nor to any evidence introduced in the State Court to support that complaint. As a result, the State Court Complaint is of limited usefulness to this Court's present analysis. At best, it confirms that certain factual allegations were made regarding fraudulent behavior.

## ANALYSIS

I.  <u>Summary Judgment Standard</u>

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court

---

[8] *See* Exhibit "E" to the Motion.

6

shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When deciding summary judgment, the Court may look to materials in the record such as depositions, documents, affidavits or declarations, and admissions." *Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins. Co.,* 981 F. Supp. 2d 1302, 1305-06 (S.D. Fla. 2013) (citing Fed. R. Civ. P. 56(c)).

The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Diaz v. Amerijet Int'l, Inc.,* 872 F. Supp. 2d 1365, 1368 (S.D. Fla. 2012) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997)) (internal quotation marks omitted); see also *Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013). Finally, the moving party "always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); see also *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314-15 (11th Cir. 2011).

II. Applicability of <u>Brown v. Felsen</u>

Well-established precedent squarely addresses one of the key legal issues raised by the Motion, which is the permissible scope of a bankruptcy court's

7

consideration of facts pertinent to the nondischargeability of a debt. In *Brown v. Felsen*, 442 U.S. 127 (1979), the United States Supreme Court considered whether a bankruptcy court is confined to a review of the judgment and record of a prior state court proceeding, or whether it may consider other evidence not introduced in a prior state court action when considering the dischargeability of a debt.

The *Brown* Court unequivocally determined that adopting a limiting rule of review would take core issues out of the jurisdiction of the bankruptcy court and force those issues onto the state court at a time when the existence of the bankruptcy might be merely hypothetical. *Id.* at 138-39. In other words, adopting such a rule would yield an absurd result. The *Brown* Court therefore rejected the concept that res judicata principles obviate the need for independent bankruptcy court review when a judgment holder seeks to prove the nondischargeability of its debt in a later bankruptcy case. *Id.*

This Court is bound by *Brown v. Felsen*, which makes the decision quite simple here. Summary judgment based purely upon either (a) entry of the Cemhan Judgment or (b) application of collateral estoppel without detailed factual conclusions in the Cemhan Judgment[9] or sufficient agreed facts in the Joint Stipulation, will be denied.

III. Collateral Estoppel

Although the Court could end its analysis here, it will continue to ensure that

---

[9] The Cemhan Judgment arose from a non-jury trial and thus there are no jury instructions to consider. ECF No. 20, at p. 45 (¶ 1).

8

both parties understand the depth of the Court's inquiry. It is true that some state court judgments may provide a basis for collateral estoppel as to some elements of a nondischargeability claim. Based upon this possibility, the Court will continue its analysis.

In the Response and Reply, the parties cited prior case law within this Circuit analyzing the potential application of collateral estoppel to a prior judgment issued by a Florida state court. Much of that case law focused upon the basic elements of collateral estoppel, which the Court will briefly list now. Those elements as previously articulated by the Eleventh Circuit Court of Appeals are:

> (1) the issue at stake must be identical to the one decided in the prior litigation;
>
> (2) the issue must have been actually litigated in the prior proceeding;
>
> (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and
>
> (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case.

*St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 675-76 (11th Cir. 1993).[10]

---

[10] Naturally, this Court looks first to case law issued by the Eleventh Circuit Court of Appeals because opinions from that court are binding upon this one. Application of the standard set forth in *St. Laurent* is appropriate because a Florida state court issued the Cemhan judgment, and the claims relating to that judgment and this Adversary Proceeding both sound in fraud. 991 F.2d at 675-76. If the Court were to apply the collateral estoppel standard described in *Thomas v. Loveless (In re Thomas),* 288 F. App'x 547, 548 (11th Cir. 2008), however, the fourth element would be slightly different. That element would become that the "party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding," *Id.* at 548. Application of Florida collateral estoppel state law likewise requires consideration of whether the matter had been fully litigated. *Compare St. Laurent*, 991 F.2d at 675-76 *with Lasky v. Itzler (In re Itzler),* 247 B.R. 546, 550 (11th Cir. 2000) (listing elements of collateral estoppel under Florida law). The Florida Supreme Court has articulated a standard with the same material considerations noted in *St. Laurent*, *Thomas*, and *Itzler*, but arranged differently. *Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.,* 945 So. 2d 1216, 1235 (Fla. 2006). Because the slight variation in standards is not material to the Court's present

Both parties agree that the issues litigated in the State Court were identical and that they were actually litigated.[11] Where they diverge is in the question of whether the State Court's determinations regarding fraud were "critical and necessary" to the Cemhan Judgment.

This is the question that simply cannot be ascertained from the record to date. The Cemhan Judgment is exceedingly brief. It provides no findings of fact. As far as the Court can tell, the transcript of the State Court proceedings is not in the record of this Adversary Proceeding. If it is included, it has not been cited in the Joint Stipulation as a basis for undisputed facts demonstrating fraudulent intent.

This lack of detail is doubly important in the context of allegations under § 523(a)(2)(A). Of all of the subsections in the Bankruptcy Code involving nondischargeability of a debt, § 523(a)(2)(A) is probably the most difficult to analyze because each of the applicable standards are highly fact-intensive and therefore not easy to prove on documents and depositions alone. The Court will explain.

IV. Section 523(a)(2)(A)

Section 523(a)(2)(A) prohibits discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud ...." 11 U.S.C. § 523(a)(2)(A).

---

determination, the Court mentions the distinctions merely to show that all potentially relevant legal standards were considered during the preparation of the Oral Ruling and this Opinion.

[11] The Court does not necessarily agree with the parties' assessment that the claims are "identical" but it will not parse this point as other factors provide a clear basis for denial of summary judgment.

The subsection provides three alternative grounds for dischargeability: actual fraud, false pretenses, and false representation.

To succeed on a § 523(a)(2)(A) claim alleging false representation or actual fraud, courts typically require litigants to prove the common law elements of fraud. *SEC v. Bilzerian (In re Bilzerian),* 153 F.3d 1278, 1281 (11th Cir. 1998); *Husky Int'l Electronics, Inc. v. Ritz,* 136 S.Ct. 1581, 1586 (2016). *C.f. SE Prop. Holdings v. Gaddy (In re Gaddy),* 977 F.3d 1051, 1057-58 (11th Cir. 2020) (describing application of *Husky*). In the context of § 523(a)(2)(A), those elements include: "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." *Bilzerian,* 153 F.3d at 1281.

Section 523(a)(2)(A) also applies to debts arising from false pretenses. False pretenses may encompass implied misrepresentations or conduct intended to create and foster a false impression. *Ershowsky v. Freedman (In re Freedman),* 431 B.R. 245, 256 (Bankr. S.D. Fla. 2010) (internal quotation omitted). As with actual fraud and false representation, creditors seeking redress for false pretenses under § 523(a)(2)(A) must demonstrate justifiable reliance. *City Bank & Trust Co. v. Vann (In re Vann),* 67 F.3d 277, 281 (11th Cir. 1995).

It is unclear from the Motion whether Plaintiffs seek a determination of nondischargeability under the standard for actual fraud, false representation, or false pretenses. Because case law has developed a slightly different form of test for each option, the lack of distinction is problematic. From the gist of the story laid out in the

11

Motion, the Court perceives that Plaintiffs intend to assert the "false representation" prong of § 523(a)(2)(A). With this assumption in mind, the lack of undisputed facts regarding Plaintiffs' justifiable reliance upon Cemhan's allegedly false statements provides yet another stumbling block to summary judgment.

Before proceeding, the Court must make another observation: public policy strongly supports a debtor's ability to gain a fresh start through operation of the Bankruptcy Code. Ample case law shows that the Court must construe exceptions to discharge narrowly in favor of the Debtor. *Gaddy,* 977 F.3d at 1056 (internal citations omitted); *Namvar v. Baker (In re Baker),* 298 B.R. 815, 818 (Bankr. S.D. Fla. 2003). This premise is well-known, but often overlooked, as it has been here. *Brown v. Felsen* clarified that only a bankruptcy court can determine the nondischargeability of a debt. Although a bankruptcy court may look to a prior state court determination to prevent relitigation of previously adjudicated facts and legal issues, when the record of the State Court proceeding fails to provide sufficient facts to support a determination of nondischargeability, the Court is duty-bound to inquire further. That is precisely the situation the Court faces now.

Thus, with that backdrop, case law examining whether an element "was critical and necessary" is, simply put, a step beyond where we are now.[12] At this juncture, the Court does not know whether to analyze actual fraud or false pretenses. If neither of those applies, and the question is merely as to the veracity of a specific

---

[12] The evolution of the "critical and necessary" standard is a topic worthy of scholarly debate, as noted by the Eleventh Circuit Court of Appeals. *See In re Harris*, 3 F.4th at 1346 n.3.

representation, the Court does not know what representation is at issue because the Joint Stipulation does not clarify this point.

Although more expository facts are located in the Motion itself, the Court's current analysis of undisputed facts is confined to only those facts the parties have stipulated to as "agreed" in the Joint Stipulation. The Court cannot ascertain from the Joint Stipulation, nor does it have findings from the Cemhan Judgment to support, Cemhan's knowledge of the falsity of the representation at the time when it was made, and whether Plaintiffs' reliance upon that statement or those statements was justifiable.

V. <u>Analysis of the Biricik and Cemhan Judgments</u>

It is entirely unclear from the record the extent to which the Biricik Judgment is or may be relevant. The Joint Stipulation states that Cemhan was neither a member nor an owner of Biricik LLC. The Joint Stipulation does not confirm alter ego status between Biricik LLC and Cemhan. Instead, paragraph 19 of the Joint Stipulation states that Squeeze filed "an Impleader Complaint" against both Cemhan and Isabel alleging theories of alter ego. The Joint Stipulation does not cite to this complaint, nor does it clarify the resolution of the alter ego allegations. Presumably, because paragraph 20 of the Joint Stipulation refers to entry of the Cemhan Judgment, Plaintiffs intended to infer that this judgment incorporated a finding of alter ego status but, then again, the State Court Complaint did not include a count as to alter ego status so the Court's supposition is simply a guess. Guesses will not

13

suffice on summary judgment.

VI. <u>Remaining Questions</u>

So, where does that leave us? After having reviewed the factual allegations in the Adversary Complaint and agreed undisputed facts in the Joint Stipulation, the Court has four key questions:

> 1) What were the elements under state law for the counts in the State Court Complaint as they relate to the Cemhan Judgment, and do those elements mirror the elements under federal law for a finding of nondischargeability under 11 U.S.C. § 523(a)(2)(A)?

This point in crucial in order for the Court to apply principles of collateral estoppel to Count 3. Although the parties agree that the matter was actually litigated in the State Court, neither the Motion nor the Joint Stipulation clarifies that the precise elements of the claims at issue in the State Court action were, in fact, identical to the elements required to prove Plaintiffs' nondischargeability claim under § 523(a)(2)(A).

> 2) Does the fact that the Cemhan Judgment was tantamount to a default judgment matter?

The Court raises this question because, as the Court has noted several times, the judgment contains no factual findings. Although the Cemhan Judgment refers to testimony in the State Court, the testimony itself (in the form of a transcript) has not been provided to this Court as of today. As a result, the scope and nature of the factual

determinations that may be inferred by virtue of entry of the Cemhan Judgment is unclear.[13]

       3) What type of evidence did the trial judge actually consider?

This question is essentially the same as the one the Court just raised. Again, the record in this Adversary Proceeding does not clarify precisely what evidence introduced in the State Court supports a finding of fraud, and why. Without that level of detail, the Court cannot proceed with an appropriate analysis under § 523(a)(2)(A).

       4) What exactly were the false representations that Cemhan allegedly made?

In other words, was the allegedly false representation that (1) Biricik could provide the infrastructure for the ICO, or (2) any funds paid by AV for the benefit of Squeeze would be promptly refunded if Biricik was unable to deliver the items contracted for? Or was the allegedly false representation something entirely different?

These and other questions leave the Court in the impossible position of determining nondischargeability without sufficient undisputed facts in the record of this proceeding. In short, the Joint Stipulation and the existing record simply to do not provide enough detail for the Court to enter summary judgment for Plaintiffs on the issue of nondischargeability.

---

[13] *Compare Howard Alternatives, Inc. v. Bentov (In re Bentov)*, 514 B.R. 907, 914 (Bankr. S.D. Fla. 2014) and *Itzler*, 247 B.R. at 554 *with Dimmitt & Owens Fin., Inc. v. Green (In re Green)*, 262 B.R. 557, 566-67 (Bankr. M.D. Fla. 2001) and *Weisser v. Rubin (In re Rubin)*, Adv. Proc. Nos. 98-16755-BKC-AJC, 98-1381-BKC-AJC-A, 2000 WL 387657, at *5 (Bankr. S.D. Fla. Apr. 11, 2000).

15

## CONCLUSION

Having reviewed the Complaint, the Motion, the Response, the Reply, the Joint Stipulation, and all accompanying exhibits, the Court concludes that material facts remain in dispute and that summary judgment is not appropriate as a matter of law. The litigation must proceed. The Court therefore directs the completion of all necessary discovery.

After all discovery is complete, counsel to Plaintiffs should contact the Court for a trial date. That being said, based upon the factual deficiencies demonstrated by the Joint Stipulation, the Court strongly suspects that settlement may prove to be the most advantageous and cost-effective path for both parties.

###

Copy furnished to:

All interested parties by the Clerk.